Filed 4/15/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| ROGER CLEVELAND GOLF COMPANY, INC., | B237424 consolidated with B239375 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. LC093721) |
| v. | |
| KRANE & SMITH, APC et al., | |
| Defendants and Respondents. | |

APPEAL from orders of the Superior Court of Los Angeles County, James A. Kaddo, Judge.  Affirmed.

Horvitz & Levy, Lisa Perrochet, John F. Querio, Jeremy B. Rosen; Cannon & Nelms, Anthony L. Cannon and Julia A. Mouser for Plaintiff and Appellant.

Towle Denison Smith & Maniscalco and Michael C. Denison for Defendants and Respondents Krane & Smith, APC, Marc Smith and Ralph C. Loeb.

Manatt, Phelps & Phillips, Harry W.R. Chamberlain II; and Michael A. Colton for Association of Southern California Defense Counsel as Amicus Curiae on behalf of Defendants and Respondents.

In this case, we address the applicable statute of limitations when an attorney is sued for malicious prosecution. Almost thirteen months after the resolution in the trial court of *Sportsmark Trading, Ltd. v. Roger Cleveland Golf Company, Inc.* (Super. Ct. L.A. County, 2007, No. BC365228) (the *Sportsmark* action), Roger Cleveland Golf Company, Inc. (RCG), the defendant therein, filed a malicious prosecution action against Sportsmark Trading, Ltd. (Sportsmark)[1] and Sportsmark's attorneys, Krane & Smith, LLC, Marc Smith, Esq., and Ralph C. Loeb, Esq. (collectively, Attorneys). In response, Attorneys filed a special motion to strike under the anti-SLAPP (strategic lawsuit against public participation) statute (Code Civ. Proc., § 425.16).[2] Relying on *Vafi v. McCloskey* (2011) 193 Cal.App.4th 874 (*Vafi*), Attorneys contended the malicious prosecution complaint was time barred by the one-year statute of limitations set forth in section 340.6, subdivision (a)[3] because the statute was not tolled during the appeal of the judgment in the *Sportsmark* action. The trial court dismissed the malicious prosecution complaint as time barred, including in its computation of the one-year period, the seven months in which the *Sportsmark* action was pending in the Court of Appeal.

---

[1]     Sportsmark is also a named defendant but as of December 2011 had not been served.

[2]     Unless otherwise stated, all further statutory references are to the Code of Civil Procedure.

[3]     Section 340.6 provides in pertinent part: "(a) An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. . . . [I]n no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist: [¶] (1) The plaintiff has not sustained actual injury. [¶] (2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred. [¶] (3) The attorney willfully conceals the facts constituting the wrongful act or omission when such facts are known to the attorney, except that this subdivision shall toll only the four-year limitation. [¶] (4) The plaintiff is under a legal or physical disability which restricts the plaintiff's ability to commence legal action."

Here, we address the discrete but related issues of accrual of a malicious prosecution cause of action and commencement of the statute of limitations. Pursuant to the "start/stop" computation refined by this court in *Rare Coin Galleries, Inc. v. A-Mark Coin Co., Inc.* (1988) 202 Cal.App.3d 330 (*Rare Coin*), a cause of action for malicious prosecution accrues upon entry of judgment in the underlying action in the trial court. (*Id*. at pp. 334-335.) The statute of limitations begins to run upon accrual and continues to run until the date of filing a notice of appeal. (*Id*. at p. 335.) The statute is then tolled during the pendency of the appeal because the plaintiff cannot truthfully plead favorable termination of the prior action, which is an element of the malicious prosecution cause of action. At the conclusion of the appellate process, that is, when the remittitur issues, the statute of limitations recommences to run. (*Id*. at pp. 335-336.)

Applying these principles, the malicious prosecution action against Attorneys is not time barred as the statute of limitations was tolled during the seven-month period in which the *Sportsmark* action was pending on appeal. *Vafi, supra,* 193 Cal.App.4th 874 did not address this issue. Because section 340.6, subdivision (a) appears to exclude tolling in these circumstances, we respectfully disagree with *Vafi* and *Yee v. Cheung* (2013) 220 Cal.App.4th 184 (*Yee*) that section 340.6 is the applicable statute of limitations governing a malicious prosecution action against an attorney. Instead, we conclude the applicable statute of limitations for malicious prosecution is section 335.1, irrespective of whether the party being sued for malicious prosecution is the former adversary (Sportsmark) or the adversary's attorneys (Attorneys).

We further conclude, however, that the trial court properly granted the anti-SLAPP motion. RCG did not establish the probability of prevailing on the merits as it did not make the minimal evidentiary showing of malice. Thus, we affirm the orders granting the anti-SLAPP motion and awarding fees to Attorneys pursuant to section 425.16, subdivision (c)(1).

FACTUAL AND PROCEDURAL BACKGROUND

Attorneys represented Sportsmark, the sole distributor of RCG's products in Hong Kong, Macau, China (not Taiwan), India, Pakistan, and Bangladesh. Sportsmark and

3

RCG entered into a distributorship agreement for a period of three years starting from January 1, 1996 and ending December 31, 1998. The distributorship agreement was renewed in 2000 for a three-year term, and again in 2002 for a four-year term with a modification in the territories to include Hong Kong, Macau and China (not Taiwan) (hereafter, the territories). In November 2005, RCG informed Sportsmark that it was renewing the distributorship agreement in the territories for "a period of one (1) year starting from January 1, 2006 and ending December 31, 2006."

In September 2006, RCG informed Sportsmark in writing that "this Distributorship will not be renewed or extended beyond December 31, 2006." Litigation ensued.

1. *The Sportsmark Action*

   a. *Complaint, Answer, Counterclaims*

In January 2007, Sportsmark filed a complaint against RCG, alleging causes of action for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) unjust enrichment, (4) declaratory relief re: distributorship agreement, and (5) declaratory relief re: trademark.

The complaint alleged Sportsmark acted as the sole distributor of RCG's golf products in the territories and was "instrumental in developing the markets" for RCG's products. The distributorship agreement allegedly was "made, renewed, modified, and extended partly orally, partly in writing and/or partly by course of conduct," and the "parties agreed that the Distributorship Agreement would continue to be renewed unless good cause existed for nonrenewal." In September 2006, RCG allegedly breached the distributorship agreement by notifying Sportsmark that it would not be renewed, "despite the fact that Defendant [RCG] did not have good cause for said nonrenewal." Sportsmark sought a judicial determination of its rights and duties under the distributorship agreement and its rights and duties with respect to the trademark "Cleveland Golf." Specifically, Sportsmark sought a declaration that it "is an owner" of the rights to the "Cleveland Golf" trademark in the territories.

4

RCG removed the action to the United States District Court. RCG answered the complaint and asserted two trademark counterclaims against Sportsmark. In its first counterclaim, RCG brought a declaratory relief action seeking a "judicial determination of its exclusive rights to the marks" "Cleveland Golf," "Cleveland," and other similar marks owned by Cleveland Golf, including but not limited to, "a determination that Sportsmark has no right to use such marks anywhere in the world" and particularly in the territories covered by the distributorship agreement. The second counterclaim sought injunctive relief, "enjoining Sportsmark from the use of the marks 'Cleveland Golf,' 'Cleveland,' and other similar and related marks owned by Cleveland Golf" in the territories or anywhere else in the world.

The United States District Court concluded it lacked subject matter jurisdiction and remanded the action to the Los Angeles Superior Court. By motion, the *Sportsmark* action was transferred to the Orange County Superior Court.

b. *Preliminary Injunction to Enjoin Sportsmark from Registering or Using RCG's Trademarks*

In February 2008, RCG sought a preliminary injunction to enjoin Sportsmark "from registering and using the marks 'Cleveland Golf,' 'Cleveland,' and other similar marks owned by Cleveland Golf in The People's Republic of China, Hong Kong, Macau . . . or anywhere else in the world, pending the outcome of this action on the merits." After commencing the *Sportsmark* action, Sportsmark filed an application in Hong Kong to register the trademark "Cleveland Golf." Sportsmark also registered the trademark "Cleveland Golf" in Macau.

The trial court granted the preliminary injunction. The written ruling stated: "The Court fails to see where Sportsmark gets the Chutzpah to claim it can register Cleveland's name. As a distributor, Sportsmark cannot appropriate Cleveland's trademark. Whether or not the distributor agreement was terminated properly does not affect the trademark issue." The order and preliminary injunction directed Sportsmark to withdraw, cancel, or abandon its trademark application in Hong Kong and trademark registration in Macau, or anywhere else in the world for the mark "Cleveland Golf," or "Cleveland." The

5

preliminary injunction, however, did not prohibit Sportsmark from selling its remaining Cleveland Golf inventory.

c. *Dismissal of Trademark Claim, Denial of Summary Judgment on Sportsmark's Contract Claims*

In October 2009, on the eve of the scheduled trial date, Sportsmark dismissed its fifth cause of action for declaratory relief regarding the "Cleveland Golf" trademark without prejudice "in order to avoid further litigation expenses in connection with that cause of action and simplify the trial." Attorney Loeb's letter to RCG's counsel further stated: "[P]lease be advised that Sportsmark hereby disclaims any interest in the trademark 'Cleveland Golf'."

The trial was postponed, and RCG moved for summary judgment on the remaining contract claims, and its two trademark counterclaims for declaratory and injunctive relief. The trial court denied the motion. The tentative ruling, which became the final ruling of the court, described the separate statement as "defective" because it "merely recites a partial history of the parties' written agreements, but includes no facts refuting the complaint's allegations of an oral contract." The trial court concluded that RCG did not meet its burden under section 437c, subdivision (p)(2), and therefore the burden never shifted to Sportsmark. The trial court also concluded RCG's trademark counterclaims were improperly asserted in its verified answer. The court noted the trademark dispute was no longer part of the operative complaint, and a summary judgment motion was not the proper vehicle by which a party may seek a permanent injunction.

d. *Permanent Injunction, Trial, Nonsuit*

In a bifurcated proceeding, the trial court held a bench trial on RCG's trademark counterclaims for declatory and injunctive relief. On April 9, 2010, the trial court granted a permanent injunction, restraining Sportsmark from registering or using RCG's trademarks in the "People's Republic of China, Hong Kong, Macau (collectively, the 'Territories'), or in the United States of America, or anywhere else in the world." The

6

trial court also concluded RCG suffered no harm because Sportsmark did not use any of RCG's trademarks in an "infringing manner."

Before the jury trial began, Sportsmark dismissed its declaratory relief cause of action seeking a judicial determination that RCG had an obligation to renew the distributorship agreement. Thereafter, trial commenced on the remaining causes of action for breach of contract, breach of the implied covenant, and unjust enrichment.

During trial, Sportsmark, through its principal, testified that the company received notice of the one-year extension of the distributorship agreement, and did not receive any writing from RCG confirming an oral agreement of another two or three-year extension. The evidence established that the agent who allegedly made the oral promise of an extension did not have authority to do so.

RCG moved for nonsuit, contending the evidence established no oral contract to renew the distributorship agreement, any oral contract to renew the distributorship agreement would be barred by the statute of frauds because it could not be completed in one year, and parol evidence was inadmissible to contradict the terms of the one-year extension. RCG also moved for nonsuit of the unjust enrichment claim on the ground that unjust enrichment is a remedy and cannot be maintained when the plaintiff alleges a breach of contract.

Sportsmark dismissed its claim for unjust enrichment. The trial court granted the motion for nonsuit. On April 26, 2010, the trial court signed a written order granting nonsuit and dismissing the complaint.

### e. *Appeal, Dismissal of Appeal*

On June 21, 2010, Sportsmark filed a notice of appeal. The appeal was dismissed on February 2, 2011, and the remittitur issued on the same day.

### 2. *RCG's Malicious Prosecution Complaint*

On May 24, 2011, RCG filed a malicious prosecution complaint against Sportsmark and Attorneys. The complaint sets forth the procedural history of the *Sportsmark* action and alleges Sportsmark and Attorneys "maliciously filed and continued to prosecute the underlying proceeding without probable cause as no

7

reasonable party, entity or attorney would have recognized or believed that Sportsmark possessed a legally tenable claim against Cleveland Golf with respect to either (1) the ownership of its registered marks or (2) the clearly stated expiration date of the written distributorship agreement." The complaint further alleges that Attorneys should have been aware of Sportsmark's false assertions and legally untenable claims at the time the underlying action was filed and throughout the course of the litigation, and nevertheless continued to prosecute the action. Attorney Smith allegedly "admitted to Cleveland Golf's legal counsel that he and Sportsmark knew that there was no legal or factual basis for the underlying lawsuit but that all he [Marc Smith and the other defendants herein] had to do [to collect from Cleveland Golf] was 'get the case to a jury.' "

a. *Special Motion to Strike*

Attorneys filed an anti-SLAPP motion, contending the malicious prosecution complaint was time barred under the one-year limitations period in section 340.6, subdivision (a), and the prescriptive period was not tolled during the pendency of the appeal from the judgment in the *Sportsmark* action. Attorneys also contended that RCG could not establish the probability of prevailing on the merits of its malicious prosecution action, focusing on the elements of lack of probable cause and malice.

The trial court granted the special motion to strike on the ground that the malicious prosecution complaint was time barred. As the prevailing party on the special motion to strike, Attorneys were awarded $47,036.45 in fees.

b. *Appeals*

RCG appeals from the order granting the anti-SLAPP motion. Both parties appeal from the attorney fees order.[4] We consolidated the appeals.

3. *Supplemental Briefing on the Applicable Statute of Limitations*

On appeal, RCG presented the issue as whether a malicious prosecution cause of action has accrued during the pendency of the appeal even if section 340.6, subdivision

---

**4**    Because RCG did not challenge the amount awarded, Attorneys have abandoned their appeal.

8

(a) were the applicable statute of limitations. After oral argument, we vacated submission and requested supplemental briefs on whether section 340.6, subdivision (a) is the applicable statute of limitations that governs a malicious prosecution action against an attorney. As shall be discussed, we conclude section 340.6, subdivision (a) is not the applicable statute of limitations.

## DISCUSSION

*Applicable Statute of Limitations Governing*

*a Malicious Prosecution Complaint Against an Attorney*

1. *Accrual of a Malicious Prosecution Cause of Action*

To establish a claim for malicious prosecution, a plaintiff must plead and prove that the prior action (here, the *Sportsmark* action) "(1) was commenced by or at the direction of the defendant and was pursued to a legal termination favorable to the plaintiff; (2) was brought without probable cause; and (3) was initiated with malice." (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 292.)

A cause of action accrues when it is complete with all of its elements. (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191.) "This is the 'last element' accrual rule: ordinarily, the statute of limitations runs from 'the occurrence of the last element essential to the cause of action.' " (*Ibid*.) The limitations period, the period in which a plaintiff must bring suit or be barred, runs from the moment a claim accrues. (See § 312 [an action "can only be commenced within the periods prescribed in this title, after the cause of action shall have accrued"].)

A "cause of action for malicious prosecution first accrues at the conclusion of the litigation in favor of the party allegedly prosecuted maliciously. [Citation.]" (*Babb v. Superior Court* (1971) 3 Cal.3d 841, 846; *Yee*, *supra*, 220 Cal.App.4th at p.193.) "The requirement of favorable termination confirms the plaintiff's innocence, serves to forestall unfounded claims and prevent inconsistent judgments, and facilitates proof of other elements of the tort." (*Ray v. First Federal Bank* (1998) 61 Cal.App.4th 315, 318, citing *Babb v. Superior Court*, *supra*, at pp. 845-847; see also *Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 341.)

a. *Impact of Notice of Appeal in Prior Action*

When an appeal is taken from a judgment that constitutes a favorable termination, a cause of action for malicious prosecution will not lie. (*Friedman v. Stadum* (1985) 171 Cal.App.3d 775, 778-779; 3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 555, p. 705.) "So long as the appeal is pending, the plaintiff cannot truthfully allege a *termination* of the action, and a malicious prosecution action is 'premature.' " (*Drummond v. Desmarais* (2009) 176 Cal.App.4th 439, 457; *Ray v. First Federal Bank*, *supra*, 61 Cal.App.4th at p. 320 [favorable termination is an "historical fact," and "a trial court simply does not have the last word on that question when its outcome depends on a subsequent appellate ruling"].)

*Gibbs v. Haight, Dickson, Brown & Bonesteel* (1986) 183 Cal.App.3d 716 (*Gibbs*) adopted an accrual rule during the pendency of an appeal taken from a judgment that constitutes a favorable termination of the prior action. (*Id*. at pp. 721-722.) Based upon the "last element" to complete the cause of action, *Gibbs* concluded the statute of limitations on a malicious prosecution cause of action commences to run upon entry of judgment in the prior action and continues to run to the date of filing the notice of appeal. (*Id.* at p. 722.) The filing of an appeal renders the malicious prosecution action premature. The statute of limitations is tolled and recommences to run when the appellate process has been exhausted. (*Ibid*.)

*Rare Coin*, *supra*, 202 Cal.App.3d 330, which refined the *Gibbs* rule, concluded the appellate process is exhausted when the remittitur issues and jurisdiction is revested in the superior court. (*Id*. at pp. 335-337.) Underlying the start/stop computation in *Gibbs* and *Rare Coin* is the well-settled legal principle that the statute of limitations cannot run during the period in which an element of a cause of action cannot be truthfully alleged. The *Gibbs* and *Rare Coin* computation remains good law. (*Drummond v.*

10

*Desmarais*, *supra*, 176 Cal.App.4th at pp. 457-458; *Feld v. Western Land & Development Co.* (1992) 2 Cal.App.4th 1328, 1334-1336.)[5]

    b. *Accrual Rule of "Actual Injury" in a Legal Malpractice Action Does Not Apply to a Malicious Prosecution Action*

  Attorneys contend the *Gibbs* and *Rare Coin* accrual rule does not apply here because the statute of limitations for a malicious prosecution cause of action alleged against an attorney is governed by section 340.6, subdivision (a), which does not permit tolling during the pendency of an appeal. Attorneys rely on *Laird v. Blacker* (1992) 2 Cal.4th 606, in which the California Supreme Court considered whether the statute of limitations is tolled while the client appeals, holding the statute of limitations commences on entry of adverse judgment or final order of dismissal. (*Id*. at p. 615.) In reaching this conclusion, the court considered the subject of accrual and what constitutes actual injury in subdivision (a)(1) of section 340.6 for purposes of tolling the statute of limitations. (*Laird v. Blacker,* at p. 609.)

  A cause of action for legal malpractice accrues when the plaintiff has suffered "actual injury," an issue first discussed in *Budd v. Nixen* (1971) 6 Cal.3d 195, 200-201, which the Legislature later codified in section 340.6, subdivision (a)(1). (*Laird v. Blacker*, *supra*, 2 Cal.4th at pp. 611-612; 3 Mallen & Smith, Legal Malpractice (2014 ed.) Statutes of Limitations, § 23.11, pp. 439-441 (hereafter, Mallen & Smith).) The *Laird* court rejected the contention that "accrual should be tolled" until resolution of the appeal because appellate review "may correct judicial error, and thus reduce the client's damages, [but] an appeal does not necessarily exonerate the attorney . . . ." (*Laird v. Blacker*, *supra*, at pp. 614, 615.)

  In *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, the court reiterated that "[a]ctual injury occurs when the client suffers any loss or injury legally cognizable as damages in a legal malpractice action based on the asserted

---

[5] The trial court has discretion to stay the malicious prosecution complaint pending resolution of the appeal. (*Drummond v. Desmarais*, *supra*, 176 Cal.App.4th at pp. 458-459; *Feld v. Western Land & Development Co.*, *supra*, 2 Cal.App.4th at pp. 1335-1336.)

11

errors or omissions. [Citations.]" (*Id* at p. 743; see also *id*. at pp. 751-752.) This accrual rule of actual injury is the last element of a legal malpractice cause of action and, as we explain, is not applicable to a malicious prosecution cause of action.

Here, applying the *Gibbs*/*Rare Coin* rule, any claim RCG had for malicious prosecution accrued on April 26, 2010, the day the trial court entered judgment in RCG's favor.[6] The statute of limitations ran for 56 days until Attorneys filed a notice of appeal on June 21, 2010. RCG could not maintain a cause of action for malicious prosecution based upon that judgment during the pendency of the appeal; thus the statute of limitations could not run. (*Gibbs*, *supra*, 183 Cal.App.3d at p. 722.) The remittitur issued on February 2, 2011, at which point the statute of limitations recommenced. RCG waited 111 additional days until May 24, 2011 to file the malicious prosecution complaint. The statute of limitations ran for a total of 167 days. Thus, this action is timely based upon the rule enunciated in *Gibbs* and *Rare Coin*.[7] (See *Stavropoulos v. Superior Court* (2006) 141 Cal.App.4th 190, 193-197 [two-year limitations period set forth in section 335.1 applies to malicious prosecution actions].)

   2. *Section 340.6 Does Not Apply to Malicious Prosecution Actions Against Attorneys*

Attorneys contend that in a malicious prosecution action against an attorney, we can no longer apply the accrual rule established in *Gibbs* and *Rare Coin* because the tolling provisions in section 340.6, subdivision (a) are exclusive. In support of this contention, they rely on *Vafi*, *supra*, 193 Cal.App.4th 874 and *Yee*, *supra*,

---

[6]    Attorneys contend that any malicious prosecution action arising from the trademark claim accrued upon dismissal on October 23, 2009. This argument is forfeited (*Mundy v. Lenc* (2012) 203 Cal.App.4th 1401, 1406). In any event, the trademark claim was not severable from the judgment. (See *Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 696-698.)

[7]    *Gibbs*, *supra*, 183 Cal.App.3d 716, and *Rare Coin*, *supra*, 202 Cal.App.3d 330, applied the personal injury statute of limitations (former § 340, subd. (3)) in a malicious prosecution action against an attorney (*Gibbs*, *supra*, at pp. 719, 722) and a nonattorney (*Rare Coin*, *supra*, at p. 333). These cases were decided after the Legislature enacted section 340.6. (*Laird v. Blacker*, *supra*, 2 Cal.4th at p. 611.)

220 Cal.App.4th 184, which held section 340.6, subdivision (a) applies to a malicious prosecution action against an attorney. Neither *Vafi* nor *Yee* addressed the issue here, that is, accrual of a malicious prosecution action and the tolling of the statute of limitations during the pendency of an appeal taken from a judgment that constitutes a favorable termination of the prior action.

    a. *Vafi and Yee*

    *Vafi*, *supra*, 193 Cal.App.4th 874, concluded the one-year limitation period in section 340.6, subdivision (a) applies to all actions, except those for actual fraud, brought against an attorney for wrongful acts or omissions that arise in the performance of professional services. (*Vafi*, *supra*, at p. 881.) Relying on the plain and unambiguous statutory language, the court noted the absence of any language exempting malicious prosecution causes of action against attorneys or limiting section 340.6, subdivision (a) to clients or former clients. (*Vafi*, *supra*, at pp. 881-882.) Further, *Vafi* recognized courts have consistently applied section 340.6, subdivision (a) to various tort and contract actions arising from an attorney's performance of professional services, not just professional negligence. (*Vafi*, *supra*, at pp. 882-883.) Applying the rule that a specific statute of limitations takes precedence over a general one, the *Vafi* court held that section 340.6, subdivision (a) overrides the catchall statute of section 335.1. (*Vafi*, *supra*, at pp. 880-881.)

    *Yee*, *supra*, 220 Cal.App.4th 184, independently considered the question of whether section 340.6, subdivision (a) applies to a malicious prosecution action against an attorney. (*Yee*, *supra*, at p. 193.) The court agreed with *Vafi*. (*Yee*, *supra*, at pp. 194-197.) The *Yee* court focused on the plain statutory language, noting broadly worded phrases in the statute, such as "wrongful act or omission" instead of "professional negligence," and "plaintiff" instead of "client," which indicated the Legislature did not intend to limit section 340.6, subdivision (a) to legal malpractice claims by a client or former client against his or her attorney. (*Yee*, *supra*, at pp. 194-196.) In addition, the *Yee* court acknowledged that the Legislature enacted what became section 340.6 to reduce the cost of legal malpractice insurance, and noted malicious prosecution actions

13

also have an impact on attorney malpractice insurance premiums. (*Yee*, *supra*, at p. 197.) *Yee* addressed public policy concerns that malicious prosecution is a disfavored cause of action which would apply even more so to claims against attorneys, who are more likely to be in litigation than the average plaintiff, and thus, more likely to be subjected to malicious prosecution claims. (*Id.* at p. 196.) The *Yee* court was not troubled that the statute of limitations for attorney defendants was different than nonattorney defendants because of sound public policy reasons for providing a more circumscribed limitations period to attorney defendants. (*Id*. at p. 197.)

While Attorneys contend that *Vafi* and *Yee* resolved the issue of whether section 340.6, subdivision (a) is applicable to malicious prosecution claims against attorneys, we are not bound by opinions of another District Court of Appeal. (*Fire Ins. Exchange v. Abbott* (1988) 204 Cal.App.3d 1012, 1023.) Unlike the *Vafi* and *Yee* courts, we read the language in section 340.6 as a professional negligence statute, similar to section 340.5, the statute of limitations applicable to a claim for professional negligence of a health care provider. As shall be shown, the legislative history and public policy considerations support this interpretation. If the Legislature had intended section 340.6, subdivision (a) to apply to malicious prosecution actions against attorneys, then *Gibbs* or our decision in *Rare Coin*, refining the *Gibbs* accrual rule, would have prompted legislative action or consideration. Applying section 340.6, subdivision (a) to attorneys without such an accrual rule during the pendency of an appeal leads to absurd results, permitting the losing party in the prior action to file a notice of appeal to run out the statute of limitations, or requiring a malicious prosecution plaintiff to bring a premature action during the pendency of the appeal. We must construe section 340.6, subdivision (a) to avoid such unreasonable results.

    b. *The Statutory Language*

" 'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose.' [Citation.] The well-established rules for performing this task require us to begin by examining the statutory language, giving it a plain and commonsense meaning. [Citation.]"

14

(*Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market*, LLC (2011) 52 Cal.4th 1100, 1106-1107.) If the statutory language is unambiguous, then the plain meaning controls. If the language supports more than one reasonable construction, then we may look to extrinsic aids, such as the legislative history and the objects to be achieved by the statute. (*Id*. at p. 1107.) "Where more than one statutory construction is arguably possible," we " 'favor the construction that leads to the more reasonable result.' [Citation.]" (*Imperial Merchant Services, Inc. v. Hunt* (2009) 47 Cal.4th 381, 388.) "[O]ur task is to select the construction that comports most closely with the Legislature's apparent intent . . . and to avoid a construction that would lead to unreasonable, impractical, or arbitrary results." (*Ibid*.)

While the *Vafi* and *Yee* courts find no ambiguity in the plain language of section 340.6, subdivision (a), we do.

Subdivision (a) of section 340.6 provides "[a]n action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first." The limitations periods in section 340.6, subdivision (a) are tolled during the times, "(i) the [plaintiff] 'has not sustained actual injury,' (ii) the negligent attorney continues to represent the [plaintiff], (iii) the attorney willfully conceals facts constituting the negligence [except this subdivision shall toll only the four-year limitation], or (iv) the plaintiff is under a disability that 'restricts the plaintiff's ability to commence legal action.' " (*Laird v. Blacker*, *supra*, 2 Cal.4th at p. 609; § 340.6, subd. (a)(1)-(4); see *ante*, fn. 3.) These statutory tolling provisions are exclusive. (*Laird v. Blacker*, *supra*, at p. 618.)

We begin by examining the exemption for "actual fraud," in section 340.6, subdivision (a) that the *Vafi* court construed as the only cause of action against an attorney exempt under the statute. "[A]ctual fraud by a lawyer is not distinctly 'professional' in nature, [and] such wrongs should be treated under the jurisdiction's

15

ordinary case law and statutes." (3 Mallen & Smith, *supra*, Statutes of Limitations, § 23:8, pp. 395-396; *Stoll v. Superior Court* (1992) 9 Cal.App.4th 1362, 1366 ["The legislative history of the statute indicates that the Legislature intended to establish a statute of limitations for any legal malpractice falling short of actual fraud."].) Thus, the actual fraud exemption more than likely refers to non-professional conduct that occurs in the performance of an attorney's services. "Fraud should not be treated as legal malpractice." (3 Mallen & Smith, *supra*, Statutes of Limitations, § 23:8, p. 395.)

The *Vafi* and *Yee* courts both cited *Southland Mechanical Constructors Corp. v. Nixen* (1981) 119 Cal.App.3d 417, disapproved on other, unrelated grounds in *Laird v. Black*, *supra*, 2 Cal.4th at page 617, to support the interpretation that section 340.6, subdivision (a) applies to any legal theory (except actual fraud) alleged against attorneys arising from professional services, including third-party actions for malicious prosecution. *Southland* was a breach of contract claim brought by clients against their former attorney. (*Southland Mechanical Constructors Corp. v. Nixen*, *supra*, at pp. 424, 429-431; see also *Stoll v. Superior Court*, *supra*, 9 Cal.App.4th at p. 1368 ["The *Southland* court concluded that the Legislature intended to apply the one-year limitations period to both tortious and contractual instances of legal malpractice, especially in light of the legislative records showing the purpose of the new statute was to reduce the costs of malpractice insurance."].)

*Levin v. Graham & James* (1995) 37 Cal.App.4th 798, cited in *Vafi*, also was an action by a former client against his attorneys, alleging breach of professional duties, in six enumerated ways, including collecting unconscionable fees for professional services. (*Id.* at pp. 801, 804-805.) "Professional services," from which a duty arises, are performed by an attorney for the benefit of his or her client. Thus, consistent with these cases, section 340.6, subdivision (a) could be read as applicable to an action by a client or former client against his or her attorney based upon any legal theory alleging tortious and contractual instances of legal malpractice.

Next, the absence of the word "client" in section 340.6, subdivision (a), and the use of the word "plaintiff" do not clearly indicate, as the *Vafi* and *Yee* courts concluded,

16

that the Legislature meant to include third-party actions against attorneys for malicious prosecution. (*Yee*, *supra*, 220 Cal.App.4th at p. 195; *Vafi*, *supra*, 193 Cal.App.4th at p. 882.) The tolling provisions in section 340.6, subdivision (a)(1) through (3) refer to "plaintiff" but mean "client." In subdivision (a)(1) the tolling provision applies if the plaintiff has not sustained "actual injury." The "actual injury" accrual rule, as noted above, is derived from the holding in *Budd v. Nixen*, *supra*, 6 Cal.3d 195, and applies to legal malpractice actions. (*Id.* at pp. 199, 200-201.) The continuous representation accrual rule in subdivision (a)(2) of section 340.6 uses "plaintiff" when it could only mean "client." And, concealment of a wrongful act or omission, in subdivision (a)(3) applies in the context of the attorney-client relationship in which the attorney conceals from his or her client the wrongful act or omission that constitutes a cause of action for legal malpractice. (3 Mallen & Smith, *supra*, Statutes of Limitations, § 23.14, pp. 553-559.)

Assuming the tolling provisions in section 340.6, subdivisions (a)(1) through (3) only apply to clients, the Legislature also used "plaintiff" elsewhere in section 340.6, subdivision (a) when setting forth the delayed discovery accrual rule. Section 340.6, subdivision (a) uses the phrase, "after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission." This delayed discovery rule is premised on the holding in *Neel v. Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, in which the court concluded "the statute of limitations for legal malpractice, as for all professional malpractice, should be tolled until the client discovers, or should discover, his cause of action." (*Id.* at p. 179; *Laird v. Blacker*, *supra*, 2 Cal.4th at p. 611.) "In cases of professional malpractice . . . postponement of the period of limitations until discovery finds justification in the special nature of the relationship between the professional . . . and [the] client." (*Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, *supra*, at pp. 187-188.) Thus, it appears the Legislature actually intended "plaintiff" to mean "client," in which case section 340.6, subdivision (a) does not apply to third-party actions against attorneys for malicious prosecution.

17

Based upon the plain language of section 340.6, subdivision (a), we conclude the Legislature's use of "wrongful act or omission" by an attorney arising in the performance of professional services was intended to include any legal theory related to a claim by a client or former client against his or her attorney, and not a claim by a third party, alleging the attorney maliciously prosecuted an action against the plaintiff. The language in section 340.6, subdivision (a) refers to "plaintiff" but in context means "client" and incorporates legal malpractice principles of delayed discovery and "actual injury" accrual that do not apply in a malicious prosecution action against attorneys. Moreover, as noted, the *Gibbs* and *Rare Coin* accrual rule does not fit into the legal malpractice template of section 340.6, subdivision (a), and excluding such a rule leads to unreasonable results.

Our reading of the statutory language in section 340.6 differs from the *Vafi* and *Yee* courts, and so we also consider the statute's purpose, legislative history, and public policy considerations. These additional factors support our conclusion that the Legislature did not intend section 340.6, subdivision (a) to apply to actions brought against an adversary's attorney arising from the litigation that is the basis of the malicious prosecution claim.

c. *Purpose and Legislative History*

As the *Yee* court notes, one of the Legislature's stated purposes in enacting section 340.6 was to attempt to reduce the costs of legal malpractice insurance.[8] (*Yee*, *supra*, 220 Cal.App.4th at p. 197.) Another purpose was to add certainty to the statute of limitations for legal malpractice and limit the "open-endedness of current law." (Sen. Com. on Judiciary, Democratic Caucus Rep. on Assem. Bill No. 298 (1977-1978 Reg. Sess.) as amended Aug. 17, 1977.)

---

[8] *Yee* addressed the concern that malicious prosecution actions increase malpractice insurance premiums. (*Yee*, *supra*, 220 Cal.App.4th at p. 197.) There is no indication in the legislative history that the Legislature considered this issue when enacting what became section 340.6. Insurers generally do not indemnify attorneys for their acts of malicious prosecution. (Ins. Code, § 533; *Downey Venture v. LMI Ins. Co.* (1998) 66 Cal.App.4th 478, 503-506.)

18

The legislative history explains why the Legislature used "wrongful act or omission" in section 340.6 instead of "legal malpractice" or "professional negligence." Section 340.6 was a product of a bill originally introduced by Assemblyman Willie L. Brown, Jr. (Assem. Bill No. 298 (1977-1978 Reg. Sess.) as introduced Jan. 25, 1977.) As originally drafted, Assembly Bill No. 298 proposed a statute of limitations "[i]n any action for damages against an attorney based upon the attorney's alleged professional negligence."[9]

Apparently, members of the Assembly Judiciary Committee reviewed and considered the article by Ronald E. Mallen, *Panacea or Pandora's Box? A Statute of Limitations for Lawyers* (1977) 52 State Bar J. 22 (hereafter, Mallen, *Panacea*), in which Mallen proposed a legal malpractice statute of limitations. (See *Southland Mechanical Constructors Corp. v. Nixen*, *supra*, 119 Cal.App.3d at p. 428; see also *Samuels v. Mix* (1999) 22 Cal.4th 1, 12-13.) Mallen's proposal used the phrase "[a]n action against an attorney for a wrongful act or omission." (Mallen, *Panacea*, *supra*, 52 State Bar J. at p. 24.) Mallen suggested this statutory language because " 'malpractice' is not in itself a word of precise definition. Legal malpractice is best stated in terms of the actual wrong: a wrongful act or omission occurring in the rendition of professional services. Thus, the statute proposed here does not include wrongs where the defendant was not acting as an attorney. Nor, should the statute include acts of actual fraud." (Mallen, *Panacea*, *supra*, 52 State Bar J. at p. 77; see also 3 Mallen & Smith, *supra*, Statutes of Limitations, § 23.8, p. 394.)

The Assembly incorporated Mallen's proposed statutory language of a "wrongful act or omission," and all the subsequent legislative material that we have reviewed referred to what became section 340.6 as a statute of limitations for legal malpractice. (See, e.g., Assem. Com. on Judiciary, Digest of Assem. Bill No. 298 (1977-1978 Reg. Sess.) as amended May 9, 1977.) A letter to then-Governor Edmund G. Brown, Jr., from

---

[9] We take judicial notice of the legislative history submitted by RCG and Attorneys in their supplemental letter briefs. (Evid. Code, §§ 452, subd. (a), (c), 459, subd. (a).)

19

the sponsor of the bill stated: "This bill creates a new statute of limitations for legal malpractice actions." (Assem. Willie L. Brown, Jr., letter to Governor Edmund G. Brown, Jr., Aug. 31, 1977, p. 1.) The bill would "bring legal malpractice statutory limits more in line with current limitations on medical malpractice actions, and would, moreover, codify relevant case law in the area of legal malpractice, and provide easier access of attorneys to malpractice insurance." (*Id*. at p. 2.)

An enrolled bill report submitted to the Governor reflected this legislative intent. (See *Elsner v. Uveges* (2004) 34 Cal.4th 915, 934, fn. 19 [enrolled bill reports prepared by a responsible agency contemporaneous with passage and before signing are instructive on matters of legislative intent].) As explained, the bill "would provide a specific statute of limitations for legal malpractice actions which basically parallels the limits imposed on medical malpractice suits . . . ." (Dept. of Legal Affairs, Enrolled Bill Rep. on Assem. Bill No. 298 (1977-1978 Reg. Sess.) prepared for Governor Brown (Sep. 15, 1977).) In section 340.5, subdivision (2), the statute of limitations for professional negligence of health care providers, defines "professional negligence" as a "negligent act or omission to act by a health care provider in the rendering of professional services."

Our review of the legislative history indicates the Legislature intended to create a specially tailored statute of limitations for legal malpractice actions, just as it had for medical malpractice. In addition to referring to "legal malpractice," the Legislature incorporated tolling provisions only applicable to legal malpractice claims. (Sen. Com. on Judiciary, Rep. on Assem. Bill No. 298 (1977-1978 Reg. Sess.) as amended May 9, 1977, p. 2.) There is no indication the Legislature even considered malicious prosecution actions against attorneys when enacting the legislation that became section 340.6.

d. *Public Policy Considerations*

Attorneys remind us that our analysis should be tempered by the traditional characterization of malicious prosecution as a "disfavored" cause of action. But this "does not warrant abridging" the traditional right of action. (*Ray v. First Federal Bank*, *supra*, 61 Cal.App.4th at p. 320.)

20

*Yee*, *supra*, 220 Cal.App.4th 184, reasoned the "disfavor for malicious prosecution actions could apply even more so to malicious prosecution claims against an attorney, who, by the nature of his or her profession, is more likely to be involved in litigation than the average plaintiff, and thus, may be more likely to be subjected to malicious prosecution claims." (*Id*. at p. 196.) Thus, the *Yee* court did not find it unreasonable that its construction of section 340.6, subdivision (a) resulted in two separate classes of malicious prosecution defendants arising from their participation in the same litigation. (*Id.* at p. 197.)

Malicious prosecution is "intended to protect an individual's interest 'in freedom from unjustifiable and unreasonable litigation' [citation] . . . ." (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 878.) The probable cause element of the tort of malicious prosecution calls on the trial court to make an objective determination of whether the underlying action was legally tenable. (*Ibid*.) An attorney, as opposed to his or her client, is in a better position to assess the legal principles and precedents necessary to make that determination. Creating two classes of malicious prosecution defendants would put a greater burden on the client whose interests are being represented and protected by his or her attorney. Unlike the *Yee* court, we conclude that imposing separate statutes of limitation on a client and his or her attorney leads to an absurd result in which the client can be sued for following the attorney's advice, long after the client's attorney ceases to be potentially liable for recommending the course of action. We can find no policy reason in the legislative history or elsewhere for providing a more circumscribed limitations period for attorney defendants than for client defendants of malicious prosecution actions.[10] For the reasons stated, we therefore, respectfully disagree with the conclusions reached in *Vafi* and *Yee*.

---

[10] As our Supreme Court has stated in a similar context, creating special rules for attorneys is disfavored. (*Trope v. Katz* (1995) 11 Cal.4th 274, 277 [an attorney litigant cannot recover attorney fees under Civ. Code, § 1717 because to "construe the statute otherwise, [the court] would in effect create two separate classes of pro se litigants— those who are attorneys and those who are not—and grant different rights and remedies to each."].)

21

*RCG Failed to Show Minimal Merit on its*

*Malicious Prosecution Complaint*

3. *Anti-SLAPP Legal Principles*

Attorneys contend that the trial court properly granted the special motion to strike the malicious prosecution complaint because RCG did not meet its burden to show the probability of prevailing on the merits.  Under section 425.16, subdivision (b)(1), a cause of action against a person arising from an act in furtherance of a constitutionally protected right of free speech may be stricken unless the plaintiff establishes a probability of prevailing on the claim.  The statute first requires a defendant to demonstrate " 'the challenged cause of action is one arising from protected activity.' " (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 733.)  If the defendant satisfies the first requirement, the burden shifts to the plaintiff to establish the second statutory requirement of showing a probability of prevailing on the claim.  (*Ibid.*)  We review an order granting an anti-SLAPP motion de novo.  (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325.)

To show a probability of prevailing on the claim, a plaintiff responding to an anti-SLAPP motion " 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' [Citations.]" (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821, abrogated by statute on another point of law as stated in *Hutton v. Hafif* (2007) 150 Cal.App.4th 527, 545-550.)  " 'We consider "the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based." [Citation.]  However, we neither "weigh credibility [nor] compare the weight of the evidence.  Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." [Citation.]' [Citations.]" (*Nygard, Inc. v. Uusi-Kerttula* (2008) 159 Cal.App.4th 1027, 1036.)

There is no dispute that filing the *Sportsmark* action is protected under the statute. Nor is there any doubt a malicious prosecution complaint is subject to anti-SLAPP

22

scrutiny. (*Jarrow Formulas, Inc. v. LaMarche*, *supra*, 31 Cal.4th at pp. 734-735.) Thus, the issue here is whether RCG met its burden to show its malicious prosecution complaint is legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment.

4. *RCG's Prima Facie Case Lacks the Minimal Showing of Malice*

RCG claims it can establish all three elements of liability, that is, favorable termination on the merits,[11] lack of probable cause, and malice. (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 676.) We focus on the evidence of malice.

"The 'malice' element of the malicious prosecution tort relates to the subjective intent or purpose with which the defendant acted in initiating the prior action." (*Sheldon Appel Co. v. Albert & Oliker*, *supra*, 47 Cal.3d at p. 874; *Downey Venture v. LMI Ins.Co.*, *supra*, 66 Cal.App.4th at p. 494.) Case law has established that a malicious prosecution plaintiff must plead and prove actual ill will, some ulterior motive, or the proceeding was initiated for an improper purpose. (*Sycamore Ridge Apartments LLC v. Naumann* (2007) 157 Cal.App.4th 1385, 1407.)

Generally, malice is established by circumstantial evidence and inferences drawn from the evidence. (*Paulus v. Bob Lynch Ford, Inc.* (2006) 139 Cal.App.4th 659, 675.) The absence of probable cause will support an inference of malice, but lack of probable cause is not sufficient by itself. (*Ibid.*) The presence of malice must be established by additional evidence. (*Downey Venture v. LMI Ins. Co.*, *supra*, 66 Cal.App.4th at pp. 498-499 & fn. 29.)

As noted, malice is present when proceedings are initiated for an improper purpose. (*Sierra Club Foundation v. Graham* (1999) 72 Cal.App.4th 1135, 1157.) "Suits with the hallmark of an improper purpose" include "those in which: ' " . . . (1) the person initiating them does not believe that his claim may be held valid; (2) the proceedings are begun primarily because of hostility or ill will; (3) the proceedings are initiated solely for

---

[11] Attorneys did not contest this element in the trial court and have forfeited the argument on appeal. (*Mundy v. Lenc*, *supra*, 203 Cal.App.4th at p. 1406.)

the purpose of depriving the person against whom they are initiated of a beneficial use of his property; (4) the proceedings are initiated for the purpose of forcing a settlement which has no relation to the merits of the claim." ' [Citation.]" (*Ibid.*) As shall be discussed, while RCG established the element of lack of probable cause, raising an inference of malice, it failed to provide additional evidence that the *Sportsmark* action was initiated for an improper purpose to meet its minimal burden to show malice.

a. *Lack of Probable Cause*

"The question of probable cause is 'whether, as an objective matter, the prior action was legally tenable or not.' " (*Soukup v. Law Offices of Herbert Hafif*, *supra*, 39 Cal.4th at p. 292.) "To make a prima facie case of a lack of probable cause in response to the anti-SLAPP motion, [the plaintiff] must submit substantial evidence showing no reasonable attorney would have thought the [prior] action was tenable in light of the facts known . . . at the time the suit was filed [citations], or that [the plaintiffs] continued pursuing the lawsuit after they had discovered the action lacked probable cause." (*Mendoza v. Wichmann* (2011) 194 Cal.App.4th 1430, 1449, citing *Zamos v. Stroud* (2004) 32 Cal.4th 958, 966-970.) " 'Only those actions that any reasonable attorney would agree are totally and completely without merit may form the basis for a malicious prosecution suit.' " (*Mendoza,* at p. 1449.) "[A]n action for malicious prosecution lies when but one of the alternate theories of recovery is maliciously asserted . . . ." (*Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 57, fn. 5.)

Whether a reasonable attorney would have thought the claim legally tenable is a legal issue. (*Franklin Mint Co. v. Manatt, Phelps & Phillips, LLP* (2010) 184 Cal.App.4th 313, 333.) This legal question is to be determined on the basis of whether as an objective matter, the prior action was legally tenable. (*Ibid.*)

(1). *Contract Causes of Action*

The malicious prosecution complaint alleges that Sportsmark and Attorneys knew that the alleged " 'two year oral distributorship agreement' was legally barred and unenforceable on a number of obvious legal grounds including *inter alia* the Statute of Frauds and the Parol Evidence Rule."

24

The trial court granted nonsuit on the contract causes of action asserted in the *Sportsmark* action. The granting of nonsuit only establishes that Sportsmark could not marshal the necessary evidence to prevail on their contract theories, but proof of lack of probable cause requires more. (See *Slaney v. Ranger Ins. Co.* (2004) 115 Cal.App.4th 306, 320.)

RCG argues that even if Attorneys believed Sportsmark had a two-year oral distributorship agreement, no reasonable attorney would have brought the contract claims because such a contract is unenforceable under the statute of frauds. An oral agreement "that by its terms is not to be performed within a year from the making thereof" is invalid. (Civ. Code, § 1624, subd. (a)(1).) Because RCG presented evidence of a one-year distributorship agreement, it presented sufficient evidence to state a prima facie case of lack of probable cause.

The crucial issue in determining lack of probable cause is the information possessed by the attorney and/or client at the time the suit is filed, and throughout the lawsuit. As Attorneys argue, Sportsmark understood that the oral agreement of a two-year extension was contingent upon meeting its annual sales goals and submitting a report, and thus the oral agreement did not violate the statute of frauds. This evidence is not sufficient to defeat the lack of probable cause element as a matter of law.[12]

(2). *Trademark Declaratory Relief Cause of Action*

The malicious prosecution complaint alleges Attorneys asserted a legally untenable claim in the *Sportsmark* action seeking a determination that Sportsmark is the owner of the trademark rights to "Cleveland Golf" in the territories. The complaint

---

[12] We agree with the trial court that the denial of RCG's summary judgment was procedural, as the trial court never determined whether a triable issue of fact existed. Therefore, the denial of the summary judgment has no bearing on our probable cause analysis.

25

further alleges that Sportsmark registered the "Cleveland Golf" trademarks as its own with full knowledge of RCG's ownership and use.[13]

RCG contends the trademark claim in the *Sportsmark* action was legally untenable because no reasonable attorney would seek recovery upon a legal theory that Sportsmark, a product distributor, owned RCG's trademarks. (See *Soukup v. Law Offices of Herbert Hafif*, *supra*, 39 Cal.4th at p. 292.) An action is legally tenable if it is supported by existing legal authority or the reasonable extension of the law. (*Franklin Mint Co. v. Manatt, Phelps & Phillips, LLP*, *supra*, 184 Cal.App.4th at p. 363.)

Existing legal authority holds "a distributor of a trademarked product does not acquire a protectable 'use' in the trademark simply by virtue of the trademark owner's permission for it to distribute its trademarked products to likely buyers." (*Mallard Creek Industries, Inc. v. Morgan* (1997) 56 Cal.App.4th 426, 443.) The trial court applied this basic legal principle when it granted the preliminary injunction, and later granted a permanent injunction barring Sportsmark from using, registering, or claiming ownership of the "Cleveland Golf" trademark in the territories. Thus, this minimal showing of lack of probable cause is sufficient to shift the burden to Attorneys.

Attorneys counter that Sportsmark's rights with respect to the trademark "Cleveland Golf" in the territories are governed by the applicable trademark laws of those foreign territories, and not California law. In raising this argument, Attorneys disavow a statement made to the trial court that "neither side is going to argue that the foreign law applies to either the trademark at issue or the contract at issue." On the

---

[13]   Sportsmark and the trial court read the allegations of its "rights and duties" in the *Sportsmark* action to include trademark infringement and rights to the trademark. RCG's first counterclaim asserted infringement, but the complaint in the *Sportsmark* action did not specifically allege this theory. While RCG lost on its infringement counterclaim, the trial court ruled against Sportsmark on its rights as to whether it had acquired the "Cleveland Golf" trademark by granting a permanent injunction from registering or using the "Cleveland Golf" trademark. The malicious prosecution complaint seeks relief based only upon the trademark claim alleged in the *Sportsmark* action.

26

trademark declaratory relief action, RCG met its minimal burden on the lack of probable cause element as a matter of law.

      b. *Malice*[14]

      As noted, the malice element focuses on Attorneys' and Sportsmark's subjective intent in initiating the *Sportsmark* action. (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 218.)

      RCG contends that Attorneys, on behalf of Sportsmark, initiated the lawsuit for the improper purpose of forcing a settlement that had no relation to the merits of the complaint. As to attorney Loeb, RCG submitted no evidence. RCG, however, submitted into evidence a statement attorney Smith made at a deposition on October 27, 2009, before trial in this action. Donald J. Reino, RCG's vice president of legal operations, submitted a declaration in which he stated: "Mr. Smith advised us that he was a partner in the law firm of Krane and Smith which represented the Plaintiff, Sportsmark Trading, Ltd. Mr. Smith asked Mr. Roten why Cleveland Golf was refusing to pay any money to settle the case." After RCG's attorney Russell W. Roten told Smith the case was frivolous and demanded that the lawsuit be dismissed, Reino recalls that Smith stated: " 'That may be true, but all I have to do is get the case to a jury.' " Roten recalls Smith asking him "point blank why Cleveland Golf was refusing to pay any money to settle the case." Roten's declaration states he told Smith the lawsuit was frivolous and Smith responded, " '[t]hat may be true, but all I have to do is get the case to a jury.' "[15]

      We conclude that based upon Smith's statement, RCG did not meet its minimal burden to show Attorneys acted with malice in filing or continuing to litigate the

---

[14]    The trial court did not address the malice element when concluding that RCG met its burden to establish the probability of prevailing on the contract claims.

[15]    Smith denied making these statements and Attorneys' objections to the admission of Reino's and Roten's declarations were overruled. The trial court did not abuse its discretion in admitting these declarations. (*HMS Capital, Inc. v. Lawyers Title Co.*, *supra*, 118 Cal.App.4th at p. 219.) In evaluating this evidence, we do not make any credibility determinations.

*Sportsmark* action for an improper purpose. These comments were typical of comments attorneys make to one another during the course of litigation and are distinguishable from the attorney's comments in *HMS Capital, Inc. v. Lawyers Title Co.*, *supra*, 118 Cal.App.4th 204. In that case, the attorney insisted on payment of $25,000 to dismiss the case, irrespective of the facts. (*Id*. at p. 219.) Therefore, no inference of malice can be drawn from Smith's statement even when viewed in the light most favorable to RCG. We summarily reject RCG's characterization of Smith's statement as evidence that Attorneys "prosecuted Sportsmark's contract claims to extort a settlement even though it knew the claims had no merit."

We also have reviewed the additional evidence related to Sportsmark's principal and conclude that this evidence does not support an inference of malice. Thus, RCG did not meet the minimal burden to present a sufficient prima facie showing of malice to sustain a favorable judgment on the malicious prosecution complaint. The trial court did not err in granting the anti-SLAPP motion.

Because we conclude the anti-SLAPP motion was properly granted, we also conclude the trial court did not err in awarding fees to Attorneys. (§ 425.16, subd. (c)(1).)

CONCLUSION

The statute of limitations for malicious prosecution is two years (§ 335.1), irrespective of whether the defendant is a former adversary or the adversary's attorney. Further, the two-year period is tolled during the pendency of an appeal taken from the judgment in the prior action that is the basis for the malicious prosecution complaint. Hence, a malicious prosecution action accrues upon entry of a favorable judgment, but the statute of limitations is tolled upon filing a notice of appeal until the remittitur issues at which time the statute of limitations resumes. While RCG's malicious prosecution complaint was timely, in response to the special motion to strike RCG did not make the minimal showing to establish malice.

DISPOSITION

The order granting the special motion to strike brought pursuant to Code of Civil Procedure section 425.16, subdivision (b)(1) is affirmed.  The order awarding attorney fees to defendants Krane & Smith, LLC, Marc Smith, and Ralph C. Loeb pursuant to Code of Civil Procedure section 425.16, subdivision (c)(1) is affirmed.  The parties are to bear their respective costs on appeal.

**CERTIFIED FOR PUBLICATION**

ALDRICH, J.

We concur:

KLEIN, P. J.

CROSKEY, J.

29