Filed 6/26/15  Opinion after rehearing (reposted to provide correct version)

*CERTIFIED FOR PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| WILLIAM PARRISH et al., | B244841 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC482394) |
| v. |  |
| LATHAM & WATKINS et al., |  |
| Defendants and Respondents. |  |

APPEAL from orders of the Superior Court of Los Angeles County, James R. Dunn, Judge.  Affirmed.

Eagan Avenatti, Michael J. Avenatti and Scott H. Sims; Panish, Shea & Boyle, Brian J. Panish, Adam K. Shea and Kevin R. Boyle; Esner, Chang & Boyer and Stuart B. Esner for Plaintiffs and Appellants.

McKool Smith Hennigan, J. Michael Hennigan and Michael Swartz for Defendants and Respondents.

## INTRODUCTION

In this case we reaffirm the principle, referred to as the interim adverse judgment rule, that the denial of a dispositive motion on the merits in an underlying action establishes the existence of probable cause and precludes the maintenance of a subsequent malicious prosecution action, unless the prior ruling is shown to have been obtained by fraud or perjury. We hold this principle applies even if the same trial judge later finds that the malicious prosecution defendant initiated the underlying action in bad faith.

In a prior litigation, FLIR Systems, Inc. and Indigo Systems Corporation (collectively, FLIR) brought suit against their former employees, William Parrish and E. Timothy Fitzgibbons (collectively, Former Employees) for, among other things, misappropriation of trade secrets (the Underlying Action). Former Employees moved for summary judgment on FLIR's complaint. The trial court denied the motion, concluding Former Employees failed to satisfy their moving burden and the evidence raised triable issues of fact. The case proceeded to a bench trial, after which the trial court found in favor of Former Employees in the Underlying Action. Moreover, Former Employees obtained an award of attorney fees pursuant to the Uniform Trade Secrets Act (the UTSA) based on the trial court's finding that FLIR brought the misappropriation claim in bad faith. (See Civ. Code, § 3426.4.) Division Six of this Appellate District affirmed the attorney fee order on appeal. (*FLIR Systems, Inc. v. Parrish* (2009) 174 Cal.App.4th 1270, 1274.)

Thereafter, Former Employees brought the instant malicious prosecution action against the attorneys who represented FLIR in the Underlying Action, Latham & Watkins LLP and Daniel Schecter (collectively, Latham). Latham moved to strike the complaint under Code of Civil Procedure section 425.16, the anti-SLAPP statute,[1] arguing, inter alia, the denial of Former Employees' defense motion for summary judgment

---

[1]    SLAPP is an acronym for "strategic lawsuits against public participation."

conclusively established FLIR had probable cause for the Underlying Action and, hence, Former Employees could not establish a possibility of prevailing on their malicious prosecution claim. The trial court granted the motion.[2]

Former Employees principally contend that the interim adverse judgment rule does not preclude this malicious prosecution action because the trial court's finding of bad faith after a bench trial in the Underlying Action negates its prior ruling denying summary judgment. We conclude this hindsight approach is inconsistent with a core principle of the interim adverse judgment rule—namely, that an interim ruling on the merits establishes probable cause in the underlying action, even though that ruling is later reversed by the trial court, a jury, or an appellate court. Accordingly, we reject Former Employees' contention and affirm.

## FACTS AND PROCEDURAL BACKGROUND

### 1. *Underlying Facts*

The trade secrets at issue involve the manufacture of microbolometers, which are devices for detecting infrared radiation used in connection with infrared cameras, night vision and thermal imaging.

Former Employees were shareholders and officers of Indigo, a company that developed and sold microbolometers. Former Employees agreed to assign to Indigo any

---

[2]  As we discuss below, the trial court granted the motion on a different ground without addressing the interim adverse judgment rule. The court concluded Former Employees could not establish a probability of prevailing on their malicious prosecution action because the action was untimely under Code of Civil Procedure section 340.6's one-year limitations period. While this appeal was pending, this court concluded that the applicable statute of limitations for malicious prosecution is the two-year period supplied by Code of Civil Procedure section 335.1, "irrespective of whether the party being sued for malicious prosecution is the former adversary . . . or the adversary's attorneys . . . . " (*Roger Cleveland Golf Co., Inc. v. Krane & Smith, APC* (2014) 225 Cal.App.4th 660, 668 (*Roger Cleveland Golf*).) Accordingly, the parties' contentions and the principal issue in this appeal have shifted to whether the interim adverse judgment rule supplies an independent legal basis for affirming the order, notwithstanding the trial court's ruling concerning the applicable limitations period.

3

intellectual property they developed during their employment with the company. In 2004, FLIR acquired Indigo and its intellectual property. Former Employees joined FLIR after Indigo's acquisition. They left FLIR on January 6, 2006, when their contracts expired.

In 2004, while working for FLIR, Former Employees presented FLIR with a business plan to outsource microbolometer manufacture. When they left FLIR in 2006, Former Employees embarked on a plan to launch a competing business that also would outsource the manufacture of microbolometers. FLIR believed the plan for the competing business was its intellectual property insofar as Former Employees had presumably developed it during their employment with Indigo and FLIR. FLIR also maintained that the competing business contemplated by the plan would necessarily use intellectual property that belonged to FLIR.

Former Employees had several meetings with FLIR in an attempt to assure FLIR that they had no intention of using its intellectual property in their new business venture. They also explained to FLIR that the business plan had been created by Fitzgibbons before he joined Indigo, and therefore was not FLIR's intellectual property.

2.      *Latham Files the Underlying Action*

On June 15, 2006, FLIR, represented by Latham, filed the Underlying Action against Former Employees, alleging seven causes of action, including misappropriation of trade secrets. The misappropriation claim alleged, on information and belief, that Former Employees had solicited venture capital for their new business by presenting a business plan that misappropriated FLIR's confidential information and trade secrets. According to the complaint, Former Employees had "sought to assuage FLIR's concerns [about the alleged misappropriation], by representing that they would not use any of . . . FLIR's confidential trade secrets, would license intellectual property from established owners, [and] would develop a 'rigorous IP filtering procedure.' " The complaint alleged "[t]hese assurances were belied by Fitzgibbons'[s] claim that he had conceived the idea for the new business before joining Indigo, even though he had joined the company seven years earlier in 1999."

4

Former Employees were deep in negotiations with a third party, Raytheon, when FLIR filed its complaint. The business venture contemplated that Former Employees would license Raytheon's intellectual property in the area of microbolometer manufacture. However, once Raytheon learned of the Underlying Action, it broke off negotiations with Former Employees.

After FLIR filed the Underlying Action, counsel for Former Employees and Latham exchanged letters concerning the business plan at the heart of FLIR's misappropriation of trade secrets claim. On July 16, 2006, Former Employees sought to prove to Latham that their business plan had been formulated by Fitzgibbons prior to joining Indigo by sending Latham a copy of the business plan Fitzgibbons submitted to another third party (Boeing) prior to joining Indigo. Counsel for Former Employees represented to Latham that their then-current business plan did not involve the use of FLIR's intellectual property but, instead, depended on licensing the necessary intellectual property from a third party. By letter of August 15, 2006, Former Employees' counsel explained to Latham that Former Employees intended to license a complete technology package, including microbolometer fabrication techniques, from a major aerospace company. By letter of September 5, 2006, counsel identified the third party as Raytheon, and pointed out that Raytheon had been in the industry longer than FLIR and Indigo.

By letter of October 12, 2006, Latham responded to the revelation that Former Employees intended to license the necessary technology from Raytheon. Latham stated, "We note [Former Employees'] contention that the Raytheon technology package provides all the needed intellectual property and know-how for [Former Employees] to engage in high-volume production of [vanadium oxide] microbolometers. While that may be the case, it begs two critical questions related to FLIR's intellectual property." First, Latham asked if the "Raytheon package include[s] a design for TEC-less operation," because FLIR possessed some patents and trade secrets in this area. Second, Latham asked how long it would take Former Employees "to achieve a viable design and production process" for the TEC-less vanadium oxide microbolometers *without* relying on FLIR's trade secrets. Latham stated that it had been informed that Raytheon did not

5

have a then-viable design, and Latham therefore believed that, absent reliance on FLIR's intellectual property, it would take Former Employees at least three years to bring a viable TEC-less vanadium oxide microbolometer to market.

        4.     *The Motion for Summary Judgment in the Underlying Action*

In December 2006, Former Employees moved for summary judgment in the Underlying Action. Their declarations in support of the motion asserted that nothing in the new business plan contemplated with Raytheon was copied from the 2004 business plan they presented to FLIR. Former Employees maintained FLIR did not own the concepts for the new business, as those concepts had been adapted from the 1999 business plan Fitzgibbons conceived before joining Indigo.

FLIR disputed Former Employees' contention that the new business plan had not borrowed concepts from intellectual property that Former Employees developed while employed by Indigo. Further, FLIR argued Former Employees' new business plan "necessarily presumes" the use of FLIR's trade secrets. To support this latter contention, FLIR introduced two brief expert declarations. The first, from Dr. Dean Neikirk, stated that, based on his experience and background, he was "not aware of any third party in the infrared market, other than Plaintiff FLIR, that has the requisite technology and capability to produce a high volume of bolometers at yields and costs sufficient to support" Former Employees' business plan. He stated that he knew of no "public domain literature demonstrating that any third party has the ability [to] produce a high volume of TEC-less [vanadium oxide] bolometers at a low cost." He therefore concluded that Former

6

Employees "could not pursue" their business plan without the use of FLIR's trade secrets. The second expert, Daniel Murphy, submitted a similar declaration.[3]

The trial court denied Former Employees' motion for summary judgment. First, the court concluded that Former Employees failed to sustain their burden of persuasion. The court explained, "[Former Employees] have made a compelling argument that they are entitled to judgment at this stage. Nonetheless, the concepts involved in this action are highly technical. Following a review of the [1999 business plan, the 2004 plan presented to FLIR, and the latest version of the business plan], the court is unable to find as a matter of law, for purposes of this motion only, that [FLIR] own[s] none of the concepts for [Former Employees'] new business, that nothing in the . . . business plan made use of [FLIR]'s proprietary confidential information, intellectual property, or work product, or that all concepts in the [business] plan were identical to those in the 1999 plan." The court further stated, "Even if defendants had sustained their burden of proof on the motion, plaintiffs have produced sufficient evidence, for example with the Neikirk and Murphy declarations, to raise a triable issue as to misappropriation of trade secrets."

5.      *The Former Employees Prevail at Trial*

The case proceeded to a bench trial before the same judge who denied the summary judgment motion. Former Employees requested a finding that the action was brought and pursued in bad faith, and an award of reasonable attorney fees under the UTSA. After trial, the court issued a lengthy statement of decision, denying FLIR relief and awarding Former Employees their attorney fees.

---

[3]      At trial, both experts explained that their opinions were based only on public domain information, and they did not consider private technology that Former Employees could license from third parties. Murphy also testified that he formerly worked for Raytheon and had executed a nondisclosure agreement with the company that prevented him from considering nonpublic Raytheon technology. He therefore deliberately *excluded Raytheon's nonpublic technology* when formulating his opinions in the case, even though FLIR and Latham had been advised by Former Employees' counsel of Former Employees' intention to license Raytheon's technology.

7

After assessing the weight and credibility of the evidence, the trial court concluded FLIR's complaint "rested on concern and speculation that [Former Employees] would, in the future, misappropriate trade secrets if [Former Employees] started a new, competitive company." The court explained, "California law prohibits injunctions based on a former employer's concern and speculation that a departing employee might commit future trade secret misuse. The 'inevitable disclosure' theory is not followed by California Courts."[4] While the court acknowledged that Former Employees' conduct had "raised a reasonable suspicion that they might misuse [FLIR's] trade secrets," the court concluded that a reasonable suspicion is not a basis for relief under the UTSA. FLIR could only prevail if it established actual misappropriation or a threat of imminent misuse of its trade secrets. FLIR's argument that Former Employees might misappropriate trade secrets in the future did not support relief; rather, the court reasoned, it would only support an argument under the rejected " 'inevitable disclosure' " theory.

As to Former Employees' request for attorney fees, the court noted that its earlier denial of the summary judgment motion did not preclude it from finding bad faith. The court explained, "[Former Employees'] request for a finding of bad faith was not at issue on the motion for summary judgment. The Court had not heard all the evidence or considered witness credibility. The denial of the motion was not a ruling on whether [FLIR] initiated or maintained the lawsuit in bad faith."

---

[4]    "The doctrine of inevitable disclosure permits a trade secret owner to prevent a former employee from working for a competitor despite the owner's failure to prove the employee has taken or threatens to use trade secrets. Under that doctrine, the employee may be enjoined by demonstrating the employee's new job duties will inevitably cause the employee to rely upon knowledge of the former employer's trade secrets." (*Whyte v. Schlage Lock Co.* (2002) 101 Cal.App.4th 1443, 1446.) "[T]his doctrine is contrary to California law and policy because it creates an after-the-fact covenant not to compete restricting employee mobility." (*Id*. at p. 1447.)

8

Turning to the merits of the attorney fee request, the court analyzed whether Former Employees established objective and subjective bad faith by FLIR in initiating or maintaining the trade secret claim. Objective bad faith, the court observed, is "examined by whether the facts indicate that the accusation was specious under the elements of the UTSA claim." Subjective bad faith is "examined by whether the circumstances indicate that the plaintiff knew or was reckless in not knowing that the claim lacked merit."

Considering these factors, the trial court concluded that FLIR "initiated and continued to pursue this action against [Former Employees] in bad faith and primarily for the anticompetitive motive of preventing [Former Employees] from attempting to create a new business in competition with [FLIR]." It concluded that FLIR had been "unwilling to take the risk that [Former Employees] might be able successfully to compete without misuse of [FLIR's] trade secrets."

The trial court specifically found that FLIR's suspicions regarding Former Employees "were not sufficient to justify the filing of this lawsuit on June 15, 2006, or the maintenance of the lawsuit through trial in December 2007." The court made several findings consistent with objective and subjective bad faith, including that FLIR "unreasonably discounted ways in which [Former Employees] could have proceeded with their new company lawfully," "downplayed [Former Employees'] plans to license technology from Raytheon and to make sales to Raytheon," and "failed to take reasonable measures to allay [its] fears by learning more about [Former Employees'] plans." In particular, the court noted, "[t]hree of [FLIR's] witnesses testified that they did not know at the time of the June 2006 filing of the lawsuit that [Former Employees] planned to work with Raytheon, on a non-commercial military business model, and that, had they known such facts, their concerns regarding [Former Employees] would have been allayed." The court awarded Former Employees over $1.6 million in attorney fees.

6. *Division Six Affirms the Judgment and Attorney Fee Award*

FLIR appealed the judgment and attorney fee award. Division Six affirmed. (*FLIR Systems, Inc. v. Parrish, supra,* 174 Cal.App.4th at p. 1274.) In affirming the attorney fee award, the appellate court observed, "[FLIR] does not appear to appreciate the trial court's factfinding power and its discretionary power to award attorney fees and costs to curtail a bad faith claim of trade secret misappropriation." (*Id*. at p. 1276.) The court rejected FLIR's claim that the denial of Former Employees' motion for summary judgment estopped the trial court from finding bad faith. (*Id*. at p. 1282.) The court further noted that FLIR's experts' trial testimony undermined their declarations submitted in opposition to summary judgment (see fn. 3, *ante*), and explained that the trial court denied Former Employee's summary judgment motion "because it had not heard all the evidence or considered witness credibility." (*Id*. at p. 1283.)

7. *The Instant Action*

On April 6, 2012, Former Employees filed the instant malicious prosecution action against Latham.[5] They alleged that Latham brought and pursued the Underlying Action with malice and without probable cause. They asserted that Latham pursued the action on the theory that Former Employees would misuse trade secrets in the future, even though the legal basis for that theory (inevitable disclosure) was discredited. Former Employees further alleged that Latham brought the action knowing FLIR had an anti-competitive purpose in suing them.

---

[5] Former Employees and Latham executed a tolling agreement, accounting for part of the delay in filing suit.

10

8.      *Latham's Anti-SLAPP Motion*

Latham moved to strike the complaint under the anti-SLAPP statute. Latham argued, and Former Employees did not dispute, that the malicious prosecution action arose out of Latham's protected petitioning activity and was therefore the proper subject of an anti-SLAPP motion. Thus, the parties agreed the dispositive issue was whether Former Employees could establish, as required by the anti-SLAPP statute, a reasonable probability of prevailing on their complaint. (Code Civ. Proc., § 425.16, subd. (b)(1).)

Latham argued that Former Employees could not establish a probability of prevailing for two reasons: (1) the action was untimely under Code of Civil Procedure section 340.6;[6] and (2) the trial court's denial of summary judgment in the Underlying Action established that Latham had probable cause to bring the Underlying Action as a matter of law.

Former Employees opposed the motion. First, they argued that Code of Civil Procedure section 340.6 is not the appropriate statute of limitations and that, under the appropriate statute, Code of Civil Procedure section 335.1,[7] the action was indisputably timely. Second, Former Employees argued there was evidence that Latham brought the Underlying Action without probable cause. Specifically, they argued the trial court's later finding of bad faith undermined the value of the denial of summary judgment for purposes of assessing the existence of probable cause.

The trial court granted Latham's anti-SLAPP motion on the statute of limitations ground without addressing whether the interim adverse judgment rule conclusively established that Latham had probable cause to bring the trade secret claim. Former Employees filed a timely notice of appeal.

---

[6]      Code of Civil Procedure section 340.6, subdivision (a), provides a one-year limitations period for "[a]n action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services . . . ."

[7]      Code of Civil Procedure section 335.1 provides a two-year limitations period for an action for injury "caused by the wrongful act or neglect of another."

11

The initial issue on appeal is whether the trial court erred in concluding the action was untimely under Code of Civil Procedure section 340.6. While this appeal was pending, we decided *Roger Cleveland Golf, supra,* 225 Cal.App.4th 660, in which we concluded that "the applicable statute of limitations for malicious prosecution is [Code of Civil Procedure] section 335.1, irrespective of whether the party being sued for malicious prosecution is the former adversary . . . or the adversary's attorneys . . . . " (*Roger Cleveland Golf,* at p. 668.) As Latham concedes the action is timely under Code of Civil Procedure section 335.1, and since we have no cause to reverse our holding in *Roger Cleveland Golf,* the trial court's rationale for granting the anti-SLAPP motion is no longer viable.

The focus has thus shifted to the alternative basis on which Latham pursued its motion—that is, whether Former Employees established a probability of prevailing with respect to the lack of probable cause element of their malicious prosecution claim. Latham argues the trial court's denial of summary judgment in the Underlying Action establishes probable cause under the interim adverse judgment rule as a matter of law. Former Employees argue the interim adverse judgment rule does not apply because the trial court denied summary judgment on a technical ground and, in any event, the court's subsequent finding of objective bad faith negates the probable cause presumption created by the interim adverse ruling. We conclude the Supreme Court's decision in *Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811 (*Wilson*) is controlling and mandates a finding of probable cause under the interim adverse judgment rule.

## DISCUSSION

1.    *Standard of Review*

"[T]he issue on appeal is whether [the malicious prosecution plaintiff] presented evidence in opposition to [the malicious prosecution] defendants' anti-SLAPP motions that, if believed by the trier of fact, would be sufficient to support a judgment in his favor. This question is one of law, and we review the trial court's decision de novo. [Citations.] In doing so, we 'consider[] the pleadings and evidentiary submissions of both the plaintiff

and the defendant [citation]; though [we do] not *weigh* the credibility or comparative probative strength of competing evidence, [we will] grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim.' [Citation.]" (*Plumley v. Mockett* (2008) 164 Cal.App.4th 1031, 1047-1048 (*Plumley*).)

2.      *The Statute of Limitations Does Not Bar This Action*

Latham prevailed on its anti-SLAPP motion on the theory that Former Employees' action was barred under Code of Civil Procedure section 340.6's one-year limitations period. While there is some authority applying Code of Civil Procedure section 340.6 to malicious prosecution actions against attorneys, we disagreed with that authority in *Roger Cleveland Golf, supra,* 225 Cal.App.4th at p. 668. Considering the statutory language, the legislative history, the applicable public policy, and the interests of interpreting a statute to avoid absurd results, we concluded Code of Civil Procedure section 340.6 does not apply to malicious prosecution actions. (*Id*. at p. 677.) Latham agrees that Former Employees' malicious prosecution action is timely when considered under Code of Civil Procedure section 335.1's two-year limitations period. We therefore turn to the alternative basis on which Latham argued Former Employees could not establish a probability of prevailing: the lack of probable cause element of malicious prosecution and the interim adverse judgment rule.

3.      *Probable Cause*

"Malicious prosecution has long been considered a disfavored tort both because of 'its "potential to impose an undue 'chilling effect' on the ordinary citizen's willingness . . . to bring a civil dispute to court" [citation] and because, as a means of deterring excessive and frivolous lawsuits, it has the disadvantage of constituting a new round of litigation itself [citation].' " (*Paiva v. Nichols* (2008) 168 Cal.App.4th 1007, 1018 (*Paiva*); *Wilson, supra,* 28 Cal.4th at p. 817 ["A preferable approach is 'the adoption of measures facilitating the speedy resolution of the initial lawsuit and authorizing the imposition of sanctions for frivolous or delaying conduct within that first action itself.' "].) Thus, as our Supreme Court observed, "the elements of [malicious

13

prosecution] have historically been carefully circumscribed so that litigants with potentially valid claims will not be deterred from bringing their claims to court by the prospect of a subsequent malicious prosecution claim." (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 872 (*Sheldon Appel*); *Paiva,* at p. 1018.)

"To establish a cause of action for malicious prosecution, a plaintiff must plead and prove that the underlying action was (1) commenced by or at the direction of the defendant and pursued to a legal termination in the plaintiff's favor; (2) brought without probable cause; and (3) initiated with malice." (*Plumley, supra,* 164 Cal.App.4th at p. 1047; *Crowley v. Katleman* (1994) 8 Cal.4th 666, 676.) Unlike the malice element, which is a factual question (*Sheldon Appel, supra,* 47 Cal.3d at p. 874), "the existence or nonexistence of probable cause is a legal question to be resolved by the court in the malicious prosecution case; litigants are thus protected against the danger that a lay jury would mistake a merely unsuccessful claim for a legally untenable one." (*Wilson, supra,* 28 Cal.4th at p. 817; *Sheldon Appel,* at pp. 874-877; *Paiva, supra,* 168 Cal.App.4th at p. 1018.)

"The presence or absence of probable cause is viewed under an objective standard applied to the facts upon which the defendant acted in prosecuting the prior case" (*Paiva, supra,* 168 Cal.App.4th at p. 1018), and "without reference to whether the attorney bringing the prior action believed the case was tenable" (*Wilson, supra,* 28 Cal.4th at p. 817). (*Sheldon Appel, supra*, 47 Cal.3d at pp. 878, 881.) The test for determining probable cause is "whether any reasonable attorney would have thought the claim tenable." (*Sheldon Appel,* at p. 886.) This "rather lenient standard" (*Wilson,* at p. 817) is based upon the test for determining frivolous appeals (see *In re Marriage of Flaherty* (1982) 31 Cal.3d 637), and "more appropriately reflects the important public policy of avoiding the chilling of novel or debatable legal claims." (*Sheldon Appel,* at p. 885; *Paiva,* at pp. 1018-1019.)

14

"[P]robable cause to bring an action does not depend upon it being meritorious, as such, but upon it being *arguably tenable*, i.e., not so completely lacking in apparent merit that no reasonable attorney would have thought the claim tenable. [Citation.]" (*Wilson, supra*, 28 Cal.4th at p. 824.) " 'Counsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win . . . .' [Citation.]" (*Sheldon Appel, supra*, 47 Cal.3d at p. 885, quoting *In re Marriage of Flaherty, supra*, 31 Cal.3d at p. 650.) "Reasonable lawyers can differ, some seeing as meritless suits which others believe have merit, and some seeing as totally and completely without merit suits which others see as only marginally meritless. Suits which *all* reasonable lawyers agree totally lack merit—that is, those which lack probable cause—are the least meritorious of all meritless suits. Only this subgroup of meritless suits present no probable cause." (*Roberts v. Sentry Life Insurance* (1999) 76 Cal.App.4th 375, 382 (*Roberts*); *Wilson,* at p. 817 ["Only those actions that ' "any reasonable attorney would agree [are] totally and completely without merit" ' may form the basis for a malicious prosecution suit."].)

    4.  *The Interim Adverse Judgment*

  "Under established law, certain nonfinal rulings on the merits may serve as the basis for concluding that there was probable cause for prosecuting the underlying case on which a subsequent malicious prosecution action is based." (*Paiva, supra,* 168 Cal.App.4th at p. 1020; *Wilson, supra*, 28 Cal.4th at pp. 817–818.) This principle, referred to as the interim adverse judgment rule, draws on the "rather lenient standard" of probable cause articulated in *Sheldon Appel* to recognize that "[c]laims that have succeeded at a hearing on the merits, even if that result is subsequently reversed by the trial or appellate court, are not so lacking in potential merit that a reasonable attorney or litigant would necessarily have recognized their frivolousness." (*Wilson,* at p. 818.)

  The interim adverse judgment rule originated with decisions in which the underlying case resulted in a plaintiff's verdict or judgment that was subsequently set aside or reversed by the trial or an appellate court. (See, e.g., *Fairchild v. Adams* (1959) 170 Cal.App.2d 10 (*Fairchild*); *Cowles v. Carter* (1981) 115 Cal.App.3d 350 (*Cowles*).)

15

Those decisions recognized that a judgment in favor of the plaintiff in the underlying case—i.e., the defendant in the subsequent malicious prosecution action—is, in the absence of fraud, conclusive evidence of probable cause to bring the underlying action, notwithstanding the subsequent reversal of the judgment. (*Fairchild,* at p. 15 [although jurors were "declared by the Supreme Court to be in error," their judgment in favor of the plaintiff in underlying will contest was "conclusive evidence, in the absence of fraud, of the existence of probable cause"]; *Cowles,* at p. 354 [trial judge's denial of nonsuit motion coupled with verdict in favor of plaintiff sufficient to establish probable cause despite same trial judge's subsequent grant of defense judgment notwithstanding the verdict].)

In *Wilson*, our Supreme Court recognized that the rationale for the interim adverse judgment rule applies with equal force when the trial court in the underlying case denies an interim dispositive motion on the merits. As the high court explained, "[d]enial of a defense summary judgment motion on grounds that a triable issue exists, or of a nonsuit*,* while falling short of a determination of the merits, establishes that the plaintiff has substantiated, or can substantiate, the elements of his or her cause of action with evidence that, if believed, would justify a favorable verdict." (*Wilson, supra,* 28 Cal.4th at p. 824.) That is, "[a] trial court's conclusion that issues of material fact remain for trial 'necessarily impl[ies] that the judge finds at least some merit in the claim. The claimant may win, if certain material facts are decided favorably. This finding (unless disregarded) *compels* [the] conclusion that there is probable cause, because probable cause is lacking only in the *total absence* of merit.' [Citation.] Giving effect to this conclusion 'serves the policy expressed in *Sheldon Appel* to discourage dubious malicious prosecution suits.' " (*Id.* at p. 819, first italics added, abrogated by statute on another ground, as stated in *Hutton v. Hafif* (2007) 150 Cal.App.4th 527, 547.)

Critically, success in defeating an interim dispositive motion on the merits establishes probable cause "even if that result is subsequently reversed by the trial or appellate court." (*Wilson, supra,* 28 Cal.4th at p. 818.) As the *Wilson* court explained, "[i]t would be a ' "hard law,' " indeed, that ' "would render a plaintiff liable in damages

for instituting an action . . . in the event that, notwithstanding a judge of the superior court was satisfied that upon those facts the plaintiff had a meritorious case, a ruling to that effect should afterwards be set aside." ' " (*Id.* at p. 822.) Because " ' "[t]he inquiry [is] not whether the plaintiff had in fact a good and valid cause of action, but whether this was apparently true, . . . [it is] the right of the plaintiff to invoke a judicial decision concerning the merits of the case presented for determination," ' " notwithstanding that the decision is subsequently reversed. (*Id.* at p. 818, italics omitted; *Cowles, supra,* 115 Cal.App.3d at p. 354.)

Certain exceptions apply to the operation of the interim adverse judgment rule. If the summary judgment motion was denied "on procedural or technical grounds, rather than for existence of triable issues of material fact," the summary judgment denial does not establish that probable cause existed. (*Wilson, supra,* 28 Cal.4th at p. 823.) This is because a denial on procedural grounds "says nothing regarding the potential merit of the action." (*Id.* at p. 823; see, e.g., Code Civ. Proc., § 437c, subds. (b) [motion may be denied if supporting papers do not include a separate statement of undisputed facts] & (e) [motion may be denied if the only proof of one or more material facts is the declaration of the sole witness to the fact, or a material fact as to a person's state of mind is sought to be established solely by the person's testimony].)

Further, if the interim ruling was obtained by fraud or perjury, the ruling does not establish probable cause. (*Wilson, supra,* 28 Cal.4th at pp. 817, 820.) Fraud or perjury in this sense is not established simply by showing the plaintiff or attorney discounted adverse evidence in the underlying action. An "attorney who possesses competent evidence to substantiate a legally cognizable claim for relief does not act tortiously by bringing the claim, even if also aware of evidence that will weigh against the claim." (*Id.* at p. 822.) "[T]he fraud exception requires ' "knowing use of false and perjured testimony." ' " (*Antounian v. Louis Vuitton Malletier* (2010) 189 Cal.App.4th 438, 452.)

17

5.      *The Interim Adverse Judgment Rule Applies; The Trial Court's Summary Judgment Denial Establishes Probable Cause and Precludes Former Employees' Malicious Prosecution Claim*

The trial court in the Underlying Action, viewing the evidence in the light most favorable to Latham's clients as the non-moving parties, concluded it could not grant Former Employees' defense motion for summary judgment on the trade secret claim. Though it acknowledged Former Employees had made a "compelling argument" for summary judgment, the court ruled that, "[f]ollowing a review of the [1999 business plan submitted, the 2004 plan presented to FLIR, and the new business plan], the court is unable to find as a matter of law, for purposes of this motion only, that [FLIR] own[s] none of the concepts for [Former Employees'] new business, that nothing in the [new] business plan made use of [FLIR]'s proprietary confidential information, intellectual property, or work product, or that all concepts in the [new] plan were identical to those in the 1999 plan."  Accordingly, the court found Former Employees had "failed to sustain their burden of proof on the motion."

Former Employees do not contend Latham obtained this ruling through fraud or perjury.  Rather, they argue the court's statement that Former Employees "failed to sustain their burden of proof on the motion" establishes the motion was denied on a *technical ground* that does not trigger the interim adverse judgment rule.  (See *Wilson, supra,* 28 Cal.4th at p. 823.)  We disagree.  As our Supreme Court stated in *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, "the party moving for summary judgment bears the [ultimate] burden of persuasion that there is *no triable issue of material fact* and that he is entitled to judgment as a matter of law."  (Italics added.) Former Employees sought to meet that burden by demonstrating the new business plan was based on a prior business plan Fitzgibbons prepared in 1999, as opposed to the 2004 plan Former Employees developed at Indigo and presented to FLIR.  As the trial court noted in its written ruling, FLIR disputed this contention in opposing summary judgment

18

by citing the purportedly different business plans, while arguing the plans were substantively the same.[8]  Consistent with that contention, the trial court concluded, after comparing the 1999, 2004 and new business plans, that it was "unable to find as a matter of law . . . that [FLIR] own[s] none of the concepts for [Former Employees'] new business, that nothing in the [new] business plan made use of [FLIR]'s proprietary confidential information, intellectual property, or work product, or that all concepts in the [new] plan were identical to those in the 1999 plan."  Though the court framed its conclusion in terms of Former Employees' failure to sustain their burden as the moving party, the necessary implication of the court's ruling is that the evidence raised a triable issue of material fact.  (See *Aguilar,* at p. 850.)  This is not a "technical ground," but rather an acknowledgement that FLIR's claim had some conceivable merit.  (*Wilson, supra,* 28 Cal.4th at p. 823.)

Regardless of the trial court's reasons for denying the motion, Former Employees contend the court's subsequent finding of bad faith in connection with awarding UTSA attorney fees negates the summary judgment ruling for purposes of invoking the interim adverse judgment rule.  In advancing this argument, Former Employees rely principally upon the Court of Appeal's opinion in *Slaney v. Ranger Ins. Co.* (2004) 115 Cal.App.4th 306 (*Slaney*).  In view of its seeming inconsistencies with our Supreme Court's statement of the law in *Wilson, Slaney* is not persuasive on this point.

In *Slaney*, an insurance company denied a claim by its insureds for damage to a plane.  The plane's prior owner prepared an estimate for repair to the plane, which the insureds submitted with their claim.  The insurer denied the claim and asserted the insureds and the prior owner had conspired to present a fraudulently excessive claim.

---

[8]     FLIR disputed the contention in its separate statement, citing the new business plan and the 2004 presentation for the proposition that "both [Former Employees' proposed new business] and FLIR have stated intentions to pursue high-volume production of low-cost microbolometers and related components, in order to reach commercial markets" and "[Former Employees] conceived of this idea while under and in violation of the non-compete agreements which they signed at the time of the merger."

The insureds sued their insurer for bad faith, and the insurer cross-complained against the insureds and the prior owner for fraud. The prior owner moved for summary judgment; the trial court *denied* the motion. However, the prior owner subsequently renewed the motion before a different trial judge who granted the motion. Thereafter, in the litigation between the insurer and the insureds, the insureds prevailed in their claim for bad faith, and the jury concluded the insurer's denial of the claim—based on its assertion of fraud against the insureds and the prior owner—was malicious. (*Slaney, supra,* 115 Cal.App.4th at p. 309.) The prior owner brought a malicious prosecution action against the insurer. The insurer filed an anti-SLAPP motion, arguing the initial denial of the prior owner's summary judgment motion established it had probable cause to pursue its claim. The trial court denied the motion and the *Slaney* court affirmed. (*Id.* at pp. 309-310.)

The *Slaney* court concluded the interim adverse judgment rule did not apply under the circumstances of the case. (*Slaney, supra*, 115 Cal.App.4th at pp. 309-310.) The court recognized that the denial of summary judgment is normally sufficient to establish probable cause, and the prior owner's subsequent success on the renewed summary judgment motion was not enough to undermine this conclusion. (*Id.* at p. 320.) However, the fact that the jury ultimately found the insurer denied the claim with malice was sufficient, in the court's view, to undermine the effect of the prior summary judgment denial. The court explained it was "reasonable to infer" from the malice finding that the jury "concluded [the insurer's] theory of conspiracy . . . was itself fraudulent and prosecuted in bad faith." (*Id.* at p. 321.) "This," the *Slaney* court held, "along with the ultimate grant of summary judgment in favor of [the prior owner] [was] sufficient to offset the first denial of the motion for summary judgment and support inferences of lack of probable cause and malice." (*Ibid.*)

*Slaney* is difficult to square with the interim adverse judgment rule's core principles as articulated in *Wilson*. To begin, *Slaney* holds that while a prior summary judgment denial standing alone establishes probable cause, this result can be negated by a subsequent grant of summary judgment coupled with a jury finding of malice. That

20

conclusion is inconsistent with the "rather lenient standard" for finding probable cause (*Wilson, supra,* 28 Cal.4th at p. 817) and the Supreme Court's concomitant holding that the denial of an interim dispositive ruling on the merits "*precludes* the maintenance of a subsequent malicious prosecution action, unless the prior ruling is shown to have been obtained by fraud or perjury." (*Id.* at p. 820, italics added.) Because probable cause exists unless "*all* reasonable lawyers agree [the suit] totally lack[s] merit" (*Roberts, supra,* 76 Cal.App.4th at p. 382), and an interim adverse ruling conclusively establishes that at least one neutral jurist believes the suit has "at least some merit" (*id.* at p. 383), a different finding in later proceedings by the trial court or jury cannot negate the necessary conclusion that probable cause existed. (See *Wilson,* at p. 819.) As the Supreme Court put it in *Wilson*, "[i]t would be a ' "hard law," ' indeed, that ' "would render a plaintiff liable in damages for instituting an action . . . in the event that, notwithstanding a judge of the superior court was satisfied that upon those facts the plaintiff had a meritorious case, a ruling to that effect should afterwards be set aside." ' " (*Id.* at p. 822.)

Moreover, the hindsight approach employed in *Slaney* is inconsistent with the principle that plaintiffs and their attorneys "have the right to bring a claim they think unlikely to succeed, so long as it is arguably meritorious." (*Wilson, supra,* 28 Cal.4th at p. 822, citing *Sheldon Appel, supra,* 47 Cal.3d at p. 885.) Contrary to the *Slaney* court's conclusion, the fact that the trial court or jury later rejects a plaintiff's claim and, after weighing the competent evidence, finds the claim was brought with malice, does not negate other evidence which, standing alone, establishes the existence of probable cause. "A litigant or attorney who possesses competent evidence to substantiate a legally cognizable claim for relief does not act tortiously by bringing the claim, *even if also aware of evidence that will weigh against the claim.* Plaintiffs and their attorneys are not required, on penalty of tort liability, to attempt to predict how a trier of fact will weigh the competing evidence, or to abandon their claim if they think it likely the evidence will ultimately weigh against them." (*Wilson,* at p. 822, italics added.)

21

When viewing the evidence in the light most favorable to Latham's clients, the trial court in the Underlying Action concluded FLIR's trade secret claim and the similarity of the various business plans presented triable issues that could not be resolved on summary judgment. Notwithstanding that ruling, after evaluating the weight and credibility of the evidence at trial, and finding, in particular, that FLIR and Latham "unreasonably discounted" and "downplayed" adverse evidence and Former Employees' explanations concerning the alleged misappropriation, the court ultimately concluded FLIR filed and maintained the claim in bad faith, thereby warranting an attorney fee sanction under the UTSA. That conclusion is not inconsistent with the existence of probable cause or the court's prior ruling denying summary judgment.

As the trial court explained in its statement of decision, "[Former Employees'] request for a finding of bad faith was not at issue on the motion for summary judgment," and "[t]he Court had not heard all the evidence or considered witness credibility" when it denied the motion. The finding, based on the more complete record developed at trial, that Latham and FLIR downplayed or unreasonably discounted evidence weighing against the trade secret claim, though supporting the bad faith finding, does not establish a lack of probable cause. As noted, if FLIR and Latham had evidence to substantiate the trade secret claim, as the trial court concluded they had in denying summary judgment, there was probable cause, "even if [they were] also aware of evidence that [would] weigh against the claim." (*Wilson, supra,* 28 Cal.4th at p. 822.) The bad faith finding does not negate the court's prior conclusion that the trade secret claim had " 'at least some merit' " so as to warrant a trial on the conflicting evidence.[9] (*Id.* at p. 819.) The interim adverse judgment rule applies and precludes Former Employees' malicious prosecution claim.

_____

[9]     Because the trial court's denial of summary judgment based on the similarities between the 2004 and new business plans is alone sufficient to invoke the interim adverse judgment rule, we do not address Former Employees' contention that Latham fraudulently procured the summary judgment denial by offering expert declarations that deliberately ignored Former Employees' plan to license the needed technology from Raytheon. (See fn. 3, *ante*; *Robert, supra,* 76 Cal.App.4th at p. 384.)

## DISPOSITION

The order granting Latham's anti-SLAPP motion is affirmed. Latham is entitled to recover its costs on appeal.

***CERTIFIED FOR PUBLICATION***

KITCHING, J.

WE CONCUR:


EDMON, P. J.


EGERTON, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.